UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SCOTT ALBERT GURNEY,

                    Plaintiff,

          v.                                    **DECISION AND ORDER**
                                                14-CV-688S

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.


          1.     Plaintiff Scott Albert Gurney challenges an Administrative Law Judge's

("ALJ") decision dated April 24, 2013, wherein the ALJ determined that Plaintiff is not

disabled within the meaning of the Social Security Act (the "Act").   Plaintiff now

contends that this determination is not based upon substantial evidence, and remand is

warranted.

          2.     Plaintiff protectively filed an application for disability insurance benefits

under Title II of the Act on November 23, 2011, alleging a disability beginning on

January 5, 2009.   The claim was initially denied on February 22, 2012.   Plaintiff

thereafter requested a hearing before an ALJ and, on April 10, 2013, Plaintiff appeared

and testified in Buffalo, NY.   On April 24, 2013, the ALJ found that Plaintiff was not

disabled within the meaning of the Social Security Act.   Plaintiff filed an administrative

appeal, and the Appeals Council denied Plaintiff's request for review on June 24, 2014,

rendering the ALJ's determination the Commissioner's final decision.   Plaintiff filed the

instant action on August 22, 2014.

3.     Plaintiff and the Commissioner each filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 8, 11).  Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings.  Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).

4.     A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (internal quotation marks and citation omitted).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), cert denied, 459 U.S. 1212 (1983).

5.     To determine whether the ALJ's findings are supported by substantial evidence, "a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's

finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."   Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).   In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."   Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.   The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.   This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.      Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460-61, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.      In this case, the ALJ determined that Plaintiff last met the insured status requirements of the Act on June 30, 2015.  (R. 19).[1]  He then made the following findings with regard to the five-step process set forth above:  (1) Plaintiff had engaged in substantial gainful activity during 2010 through his work as a jewelry setter, but that there had been a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity since the alleged onset date of January 5, 2009 (id.); (2) Plaintiff had the following severe impairments:  "mucosa retention cyst in the left maxillary sinus status postsurgical excision, lumbar spine disc protrusions and bulge with degenerative disc disease, thoracic spine degenerative disc disease, cervical spine degenerative disc disease, right shoulder partial thickness articular surface supraspinatus tears with medial subluxation of the biceps tendon and associated subacromial impingement status post surgical repair (20 CFR 404.1520(c))" (R. 20); (3) Plaintiff did not have an impairment or combination of impairments that met or medically equaled a recognized disabling impairment under the regulations (id.); (4) because

_____

[1] Citations to the underlying administrative record are designated as "R."

Plaintiff had the residual functional capacity ("RFC") to perform a full range of light work, he was capable of performing past relevant work as a jewelry setter (R. 20-25); and (5) having found that Plaintiff had the RFC to perform past relevant work, the ALJ did not examine whether other jobs exist in the national economy that Plaintiff is able to perform.

10.    Plaintiff advances two challenges to the ALJ's decision.  First, Plaintiff contends that the ALJ's assessment of Plaintiff's RFC is not supported by substantial evidence because it fails to take into account the opinion of Dr. Donna Miller, an examining physician, as to Plaintiff's moderate limitations on reaching, nor does it take into account Dr. Belles' opinion that Plaintiff should avoid noxious odors.   "The Commissioner defines RFC as a claimant's 'maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . 8 hours a day, for 5 days a week, or [on] an equivalent work schedule.'"  Sorensen v. Comm'r of Soc. Sec., No. 3:06 Civ. 554, 2010 WL 60321, at *8 (N.D.N.Y. Jan. 7, 2010) (quoting SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996) (emphasis omitted)).   In making an RFC assessment, the ALJ "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis."    SSR 96-8p, 1996 WL 374184, at *1; see also 20 C.F.R. §§ 404.1545(b)-(d), 416.945(b)-(d).  The ALJ must consider all the relevant evidence in the record, "including the claimant's physical abilities, mental abilities, and symptoms, pain, and other limitations which could interfere with work activities on a regular and continuing basis." Sorensen, 2010 WL 60321, at *8 (citing 20 C.F.R. § 404.1545).  After assessing the plaintiff's functional limitations and abilities, the ALJ then categorizes the

RFC into exertional levels of work, e.g., "sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1.

In the present case, the ALJ determined that Plaintiff was capable of performing a full range of light work. (R. 20). Light work is defined in the regulations as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." SSR 83-10, 1983 WL 31251, at *5 (S.S.A.1983). Dr. Miller's January 18, 2012 opinion found Plaintiff to have moderate limitations with respect to "repetitive heavy lifting, bending, reaching, pushing, pulling, or carrying." (R. 400). Plaintiff contends that the ALJ's RFC assessment improperly rejects Dr. Miller's assessment because it does not specifically address these limitations. However, there is no error simply because the ALJ failed to incorporate the moderate limitation by name, provided that the RFC appropriately reflects that limitation. Crawford v. Astrue, No. 13-CV-6068P, 2014 WL 4829544, at *23 (W.D.N.Y. Sept. 29, 2014) ("although the ALJ did not discuss the moderate limitations assessed by [the non-examining physician], he incorporated moderate limitations into his RFC by restricting [plaintiff] to jobs that" reflect that opinion); Wasiewicz v. Colvin, No. 13-CV-1026S, 2014 WL 5465451, at *4-5 (W.D.N.Y. Oct. 28, 2014) ("while the ALJ did not explicitly discuss" every limitation, "he did incorporate moderate limitations into his RFC"). Indeed, moderate limitations—such as those assessed by Dr. Miller—are frequently found to be consistent with an RFC for a full range of light work. See, e.g., Harris v. Comm'r of Soc. Sec., No. 09-CV-1112 NAM/VEB, 2011 WL 3652286, at *5 (N.D.N.Y. July 27, 2011) report and recommendation adopted, No. 1:09-CV-1112, 2011 WL 3652201 (N.D.N.Y. Aug. 17, 2011) (finding "slight to moderate limitations in activities that require lifting, carrying, and

reaching . . . consistent with the ALJ's conclusion that Plaintiff could perform light work"); <u>Vargas v. Astrue</u>, No. 10 CIV. 6306 PKC, 2011 WL 2946371, at *12 (S.D.N.Y. July 20, 2011) (finding "moderate limitations for lifting, carrying, handling objects, and climbing stairs" consistent with RFC for full range of light work); <u>Bass v. Colvin</u>, No. 6:13-CV-01062, 2014 WL 2616190, at *6 (W.D. Ark. June 12, 2014) (doctor's assessment that plaintiff had "'moderate' limitations in walking, standing, lifting, and carrying . . . do not appear to be inconsistent with the ALJ's finding that [p]laintiff can perform light work"); <u>Nelson v. Colvin</u>, No. 12-CV-1810 JS, 2014 WL 1342964, at *12 (E.D.N.Y. Mar. 31, 2014) ("the ALJ's determination that [p]laintiff could perform 'light work' is supported by [doctor's] assessment of 'mild to moderate limitation for sitting, standing, walking, bending, and lifting weight on a continued basis'") (citing <u>Lewis v. Colvin</u>, 548 F. App'x 675, 678 (2d Cir.2013)); <u>Hazlewood v. Comm'r of Soc. Sec.</u>, No. 6:12-CV-798, 2013 WL 4039419, at *7 (N.D.N.Y. Aug. 6, 2013) (doctor's opinion that plaintiff had "mild to moderate limitations in walking, pushing, and pulling" supported the "ALJ's determination that plaintiff could physically perform light work"); <u>Harrington v. Colvin</u>, No. 14-CV-6044P, 2015 WL 790756, at *14 (W.D.N.Y. Feb. 25, 2015) (gathering cases). The determination that Plaintiff should do only light work therefore accounts for the moderate physical limitations identified by Dr. Miller.[2]

However, even if the ALJ could be deemed to have rejected Dr. Miller's opinion as to reaching, there would be no error because the rest of the record supports a finding that Plaintiff is capable of performing light work. In the RFC assessment, the ALJ

---

[2] Social Security Ruling 85-15 addresses the importance of reaching in determining an appropriate RFC. However, this Ruling specifically applies to "significant," rather than "moderate," limitations on reaching. Social Security Ruling 85-15 ("Significant limitations of reaching or handling, therefore, may eliminate a large number of occupations a person could otherwise do.").

thoroughly discussed and considered Plaintiff's treatment history, specifically that Plaintiff did not begin treatment for his shoulder injury until July 2010 (R. 22), he underwent laparoscopic surgery on his shoulder in January 2011 (R. 23), his physical therapy records indicate consistent improvement in pain and range of motion (R. 23, citing R. 356, 359, 362, 364, 367, 373, 376, 379, 384), and in May 2011, Plaintiff reported that his shoulder was 85-90% better (R. 23, citing R. 293).   The ALJ also considered Plaintiff's own statements and submissions concerning his broad range of activities of daily living, including "showering, limited yard work, attending physical therapy, visiting with neighbors and family, driving neighbors to various medical appointments, using a computer, texting with his family, walking and caring for pets, visiting with other fire fighters, preparing some meals."  (R. 143-152).  And finally, the ALJ considered the fact that Plaintiff had engaged in activities as a jewelry setter that would be consistent with "light work" after the alleged onset date, and during the period in which Plaintiff stated that his pain was hindering his activities of daily living.  (R. 23, citing R. 293, 315).  The ALJ was not required to "recite every piece of evidence that contributed to the decision, so long as the record 'permits us to glean the rationale of [his] decision.'"   Cichocki v. Astrue, 729 F.3d 172, 178 n. 3 (2d Cir. 2013) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983)).   Accordingly, this Court concludes that the limitations assessed by the ALJ are both consistent with Dr. Miller 's opinion and supported by substantial evidence in the record.

This Court disagrees also with Plaintiff's contention that the ALJ failed to provide good reasons for rejecting the limitations assessed by Dr. Belles, Plaintiff's treating physician.   Under the "treating physician" rule, "the medical opinion of a claimant's

treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." <u>Shaw v. Chater</u>, 221 F.3d 126, 134 (2d Cir. 2000); <u>see also</u> 20 C.F.R. § 404.1527(d)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."). "The deference accorded to a treating physician's opinion may, however, be reduced upon consideration of other factors, including the length and nature of the treating doctor's relationship with the patient, the extent to which the medical evidence supports the doctor's opinion, whether the doctor is a specialist, the consistency of the opinion with the rest of the medical record, and any other factors 'which tend to support or contradict the opinion.'" <u>Michels v. Astrue</u>, 297 F. App'x 74, 76 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)(i)-(ii) and (d)(3)-(6)).

This Court finds that the ALJ provided "good reasons" for his decision to give little weight to Dr. Belles' opinion concerning Plaintiff's need to avoid noxious fumes. (R. 22). The ALJ discounted Dr. Belles' opinion on the grounds that it was "stated in connection with the claimant's claim for New York State retirement, whose standards of disability are different from those of the Social Security Administration." (R. 25). He also explained, in depth, why he found the limitation regarding noxious odors inconsistent with other substantial evidence in the record. Specifically, the ALJ noted that Plaintiff had failed to seek out testing for allergies, despite alleging extreme sensitivity to odors. (R. 24, 40). Further, the ALJ explained that the limitations imposed by Dr. Belles and the symptoms described by Plaintiff, including being unable to be around any perfumes,

were inconsistent with Plaintiff's statements concerning his activities of daily living (walking his dogs three times a week, driving neighbors, visiting with colleagues, travel, and going out to meals every month).  (R. 24).  Accordingly, this Court concludes that the ALJ did not violate the treating physician rule by affording "little weight" to Dr. Belles' opinion as to noxious fumes.  See Scitney v. Colvin, 41 F. Supp. 3d 289, 303 (W.D.N.Y. 2014) (ALJ properly discounted opinion of treating physician where the opinion was inconsistent with the record as a whole); Carvey v. Astrue, 380 F. App'x 50, 52 (2d Cir. 2010) (ALJ properly discounted opinion of treating physician where opinion was inconsistent with other medical opinions and claimant's own testimony).

11.    Second, Plaintiff contends that the record does not support the ALJ's finding that Plaintiff "is capable of performing past relevant work as a jewelry setter" (R. 25), because those activities do not constitute "past relevant work" under the Act.  The record shows that Plaintiff was the sole proprietor of a jewelry setting business—setting precious stones into necklaces and other jewelry—before and after the alleged disability onset date.  (R. 105, 107).

"Past relevant work" is defined as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it."  20 C.F.R. § 404.1560(b)(1).  In determining that Plaintiff's work as a jewelry setter was "substantial gainful activity" in step one of the five-step disability analysis, the ALJ stated only:  "The claimant's tax returns show gross receipts in a diamond cutting business of $12,865 in 2010.  Gross earnings of more than $1,010 a month as of January 1, 2012, $12,120 for the year, are considered to establish that a claimant has engaged in substantial gainful activity."

This does not follow the test set out by C.F.R. § 404.1575(a), which provides three tests to determine whether activities performed by self-employed individuals constitute substantial gainful activity:

(1) Test One:  You have engaged in substantial gainful activity if you render services that are significant to the operation of the business and receive a substantial income from the business.  Paragraphs (b) and (c) of this section explain what we mean by significant services and substantial income for purposes of this test.

(2) Test Two:  You have engaged in substantial gainful activity if your work activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in your community who are in the same or similar businesses as their means of livelihood.

(3) Test Three:  You have engaged in substantial gainful activity if your work activity, although not comparable to that of unimpaired individuals, is clearly worth the amount shown in § 404.1574(b)(2) when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work you are doing.

Briller v. Barnhart, No. 04 CIV.3649 RWS, 2005 WL 2403857, at *6-7 (S.D.N.Y. Sept. 29, 2005) (quoting C.F.R. § 404.1575(a)).  Notably, C.F.R. § 404.1575(b) states that "substantial income" in Test One is not gross business income—as the ALJ relied on here—but is instead "net income," measured by "deduct[ing] your normal business expenses from your gross income."  Therefore, the ALJ's determination that Plaintiff's jewelry setting income from 2010 was substantial gainful activity was incorrect because he looked only to the gross income of $12,865, and not to Plaintiff's net income (a loss of $72, R. 107).  Taking into account Plaintiff's reported net income from jewelry setting in the record, he never earned an amount sufficient to qualify as substantial gainful income.  (R. 123-124).  According to the record, the most Plaintiff ever earned from his business was $8,392.00 in 2008.  Id.  That amount fell below that year's substantial gainful activity threshold of $11,280 ($940/month).  See 20 C.F.R. §§ 404.1574(b)(2)(i)-

(ii); see also Social Security Administration Program Operations Manual System ("POMS") DI 10501.015, available at https://secure.ssa.gov/poms.nsf/lnx/0410501015).

Nor did the ALJ consider whether Plaintiff's jewelry setting work met either of the other substantial gainful activity tests.  In his written submission, Plaintiff stated that he worked only 3-4 hours per day, 2-3 days per week.  (R. 155).  It is therefore likely that the activity would fail at Test Two, because Plaintiff's work was not "comparable to that of unimpaired individuals in [his] community who are in the same or similar businesses as their means of livelihood."  See C.F.R. § 404.1575(a).  Further, the ALJ did not determine whether Plaintiff's work was "clearly worth" a substantially gainful amount under Test Three (id.), and the record does not appear to contain sufficient evidence to support such a finding.  Daniel v. Astrue, No. 10-CV-5397 NGG, 2012 WL 3537019, at *4-6 (E.D.N.Y. Aug. 14, 2012) (remanding where the record was unclear as to whether Plaintiff's self-employment constituted substantial gainful activity).  Because "the Commissioner did not properly base his decision on any of the three applicable tests outlined in the regulations," the determination that Plaintiff's work as a jewelry setter was "past relevant work" constitutes error as a matter of law.  See Ellis-Clements v. Comm'r of Soc. Sec., No. 2:10-CV-230, 2011 WL 2884870, at *9 (D. Vt. July 18, 2011).  This case is therefore remanded for a correct analysis under 20 C.F.R. § 404.1575 and, if Plaintiff cannot perform past relevant work, for a determination under step five as to whether "there is other work which the claimant could perform" in the national economy.  See Berry, 675 F.2d at 467.

12.    After carefully examining the record, this Court finds cause to remand this case to the ALJ for further administrative proceedings consistent with this decision.

Plaintiff's Motion for Judgment on the Pleadings is therefore granted.   Defendant's Motion for Judgment on the Pleadings is denied.


IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 11) is DENIED;

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is GRANTED;

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceeding consistent with this Decision and Order;

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.

Dated:  February 23, 2016
          Buffalo, New York

                                                    /s/William M. Skretny
                                                 WILLIAM M. SKRETNY
                                               United States District Judge